## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01594-RBJ

Millennium Funding, Inc. *et al*,

    Plaintiffs,

v.

Micfo LLC,

    Defendant.

---

## FINDINGS OF FACTS, CONCLUSIONS OF LAW, AND ORDER OF JUDGMENT

---

Having considered the evidence and testimony presented at an evidentiary hearing, the arguments of counsel, the briefing, and the governing law, the Court: enters a money judgment against Defendant Micfo, LLC ("Defendant") in favor of Plaintiffs of $4,200,000.00 in statutory damages for contributory and vicarious infringements of the 48 registered copyrights in Plaintiffs' 28 movies ("Works"); issues a writ of execution transferring any claims Defendant has against its customers including but not limited to Tefincom S.A. d/b/a NordVPN and Proton Technologies A.G. for breach of terms of service to Plaintiffs so any monetary relief obtained from these claims can used for satisfying the money judgment; and enters the following findings of fact and conclusions of law.

## I. FACTUAL BACKGROUND

***A. Plaintiffs and their copyright protected Motion Pictures***

1.      Plaintiffs MILLENNIUM FUNDING, INC., 211 PRODUCTIONS, INC., BEDEVILED LLC, BODYGUARD PRODUCTIONS, INC., DAY OF DEAD PRODUCTIONS, INC., FAMILY OF THE YEAR PRODUCTIONS, LLC, HUNTER KILLER PRODUCTIONS, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., MILLENNIUM IP, INC., MILLENNIUM MEDIA, INC., MILLENNIUM SPVH, INC., MON, LLC, RAMBO V PRODUCTIONS, INC., SF FILM, LLC, VENICE PI, LLC, and VOLTAGE HOLDINGS, LLC ("Plaintiffs") are owners of 28 copyright protected motion pictures ("Works") [Ex. P-2] that are currently available for sale in brick and mortal retail stores and for sale and rental in online stores. *See* Affs. of Richard Rionda Del Castro [Ex. P-13], Sarah Dunn [Ex. P-16], Paul Hertzberg [Ex. P-15] and Jonathan Yunger [Ex. P-17].  Between the 28 Works, there are 48 copyrights for the motion pictures and screenplays.

2.      Plaintiffs engaged the anti-piracy provider PML Process Management Limited ("PML") among others to monitor peer-to-peer networks for piracy of their Works. *See* Aff. of Rionda [Ex. P-13], Dunn [Ex. P-16] and Yunger [Ex. P-17].  PML engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to detect piracy and generate notices to be sent to the service providers assigned Internet Protocol ("IP") addresses where piracy of Plaintiffs' Works was confirmed.  *See* Aff. of Daniel Arheidt [Ex. P-12].

**B.  *Defendant and its Customers***

3.      Defendant is a defunct Infrastructure as a service (IaaS) company that leased servers and IP addresses to customers including Virtual Private Network ("VPN") providers such as Tefincom S.A. d/b/a NordVPN ("NordVPN") and Proton Technologies

AG.  *See* Complaint [Ex. P-1] at ¶¶30-33; Letter from Christine Brimm of 1/19/2022 [P-7] ("Micfo is currently without a manager").  Defendants' other customers are unknown.  *See* Aff. of Culpepper [Ex. P-18] at ¶¶9, 30.

4. NordVPN entered into marketing affiliate agreements with operators of numerous piracy websites involved with pirating Plaintiffs' Works that explicitly promoted NordVPN as a service to "safely" pirate Plaintiffs' Works.  NordVPN paid the operators a commission payment every time one of their website visitors signed up for service with NordVPN using an affiliate link.  *See* Culpepper Aff. [Ex. P-18] at ¶¶14-20.

5. PML sent thousands of notices of infringement to Defendant concerning ongoing piracy confirmed by MEU to be occurring at IP addresses Defendant had reassigned to customers.  PML sent at least 140 notices to Defendant concerning IP addresses that Defendant had reassigned to NordVPN.  *See* Arheidt Aff. [Ex. P-12] at ¶13; Dunn Aff. [Ex. P-16] at ¶¶20-21; Yunger Aff. [Ex. P-17] at ¶¶23-24; Culpepper Aff. [Ex. P-3] at ¶21.

6. Defendant's customers were required to agree to terms of a Hosting Services Agreement which was in effect while Plaintiffs' Works were pirated by Defendant's customers. *See* [Ex. P-10].

7. Section 5.4 of the Services Agreement states that "Client shall not use the Services or Infrastructure to transmit, distribute or store material: (a) in violation of any applicable law…or (d) in a manner that exposes Micfo to…civil liability." *Id.*

8. Section 8.4 of the Services Agreement states "The Client shall be solely responsible for any and all loss or damage caused to any third party as a result of access

to Micfo's Services and Hosting Services by any third party…and the Client shall indemnify Micfo and keep Micfo indemnified from and against any liability, actions, claims, costs, charges, expenses and proceedings arising from the same." *Id.*

**C. Plaintiffs' losses from Defendant's contribution to its customers' piracy.**

9.  Plaintiffs have provided a list of 2021 retail prices for purchasing physical copies of the Works that is shown below. [Ex. P-11].

| Motion Picture | Prices |
|---|---|
| *211* | $7.95 |
| *A Family Man* | $17.02 |
| *Angel Has Fallen* | $11.00 |
| *Automata* | $25.04 |
| *Bedeviled* | $29.98 |
| *Before I Go to Sleep* | $15.99 |
| *Boyka: Undisputed IV* | $11.99 |
| *Criminal* | $29.89 |
| *Day of the Dead: Bloodline* | $13.99 |

| | |
|:---:|:---:|
| *Extremely Wicked, Shockingly Vile and Evil* | $11.36 |
| *Hellboy* | $16.10 |
| *The Hitman's Bodyguard* | $14.96 |
| *Homefront* | $25.00 |
| *The Humbling* | $16.30 |
| *Hunter Killer* | $38.85 |
| *I am Wrath* | $15.00 |
| *I Feel Pretty* | $19.02 |
| *I Spit on Your Grave* | $10.79 |
| *Kill Chain* | $21.01 |
| *London Has Fallen* | $9.99 |
| *Mechanic: Resurrection* | $17.99 |
| *Once Upon a Time in Venice* | $17.99 |

| | |
|---|---|
| *Professor and the Madman, The* | $11.90 |
| *Rambo V: Last Blood* | $12.40 |
| *SKIN* | $22.80 |
| *Status Update* | $19.98 |
| *Survivor* | $14.99 |
| *Welcome Home* | $10.23 |

10. The number of Notices sent to Defendant and instances of piracy of the Works confirmed by MEU ("Hits") is shown below. [Ex. P-11].

| MOTION PICTURE | NOTICES | HITS |
|---|---|---|
| *211* | 45 | 16730 |
| *A Family Man* | 2 | 4867 |
| *Angel Has Fallen* | 662 | 7236 |
| *Automata* | 4 | 4543 |
| *Bedeviled* | 6 | 1485 |
| *Before I Go to Sleep* | 7 | 1745 |
| *Boyka: Undisputed IV* | 10 | 4872 |
| *Criminal* | 15 | 7620 |
| *Day of the Dead: Bloodline* | 10 | 9951 |
| *Extremely Wicked, Shockingly Vile and Evil* | 58 | 6697 |
| *Hellboy* | 510 | 47747 |

6

| | | |
|---|---|---|
| *The Hitman's Bodyguard* | 109 | 46924 |
| *Homefront* | 8 | 3898 |
| *The Humbling* | 3 | 1286 |
| *Hunter Killer* | 123 | 47060 |
| *I am Wrath* | 6 | 3438 |
| *I Feel Pretty* | 26 | 27340 |
| *I Spit on Your Grave* | 0 | 0 |
| *Kill Chain* | 419 | 4294 |
| *London Has Fallen* | 197 | 20329 |
| *Mechanic: Resurrection* | 29 | 16672 |
| *Once Upon a Time in Venice* | 5 | 7491 |
| *The Professor and the Madman* | 97 | 12798 |
| *Rambo V: Last Blood* | 400 | 5588 |
| *SKIN* | 3 | 2684 |
| *Status Update* | 13 | 5525 |
| *Survivor* | 7 | 3721 |
| *Welcome Home* | 29 | 6031 |

11.  A notice is sent only every 24-72 hours for ongoing piracy of a Work by a specific file. *See* Arheidt Aff. [Ex. P-12] at ¶11. Accordingly, the hit totals rather than notice totals are more informative of the complete scope of the piracy.

12.  MEU also recorded evidence that the motion picture *I Spit On Your Grave* was pirated from at least 4 Micfo IP addresses. Id. [Ex. P-12] at ¶17.

13.  Based upon the retail prices and the number of hits, Plaintiffs assert that they lost revenue of at least **$6,210,707.28** from piracy of the Works listed in the Complaint by Defendant's customers. Plaintiff Millennium Funding, Inc. asserts it lost at

least an additional **$136,039.38** from piracy of other titles it controls by Defendant's customers. Plaintiff Voltage Holdings, LLC asserts it lost at least an additional **$380,808.20** From piracy of other titles it controls by Defendant's customers. *See* Culpepper Aff. [Ex. P-18] at ¶¶40-41; Yunger Aff. [Ex. P-17] at ¶¶31-37; Dunn Aff. [Ex. P-16] at ¶¶28-30; Hertzberg Aff. [Ex. P-15] at ¶¶17-20; Rionda Aff. [Ex. P-13] at ¶¶16-17.

14. Defendant failed to take any meaningful action in response to the thousands of Notices sent to it by PML because it did not want to interfere with its valuable relationship with its customers. *See* RFA [Ex. P-4] at ¶¶14, 27, 39.

15. Mr. Golestan, the former manager of Defendant, has been quoted as saying, "To grow…Micfo began catering to VPNs," that he used the "fake companies…to disguise the ownership of the IP blocks from the VPN clients, who typically don't want to rely heavily on a single company for IP addresses and Web servers." WSJ article [Ex. P-9] at pp.5 and 7.

16. Defendant failed to take any action against these customers in response to the Notices because it was motivated to receive subscription funds from the customers rather than terminate service. *See* RFA [Ex. P-4] at ¶14.

17. Defendant also controlled as alter egos the Colorado company ROYA HOSTING and other companies such as CONTINA, FAIRWAY NETWORK, FIBER GALAXY, OPPOBOX, OPPOBOX LLC, TELENTIA, UNIVERA NETWORK and VIRTUZO. *See* RFA [Ex. P-4] at ¶¶20-23.

18. Defendant has plead guilty to 20 counts of fraud in connection with its use of these alter egos to obtain hundreds of thousands of IP addresses from the American

Registry of Internet Numbers ("ARIN") in the criminal case of *UNITED STATES OF AMERICA v. AMIR GOLESTAN, et al.*, Crim. No. 2:19-cr-00441-RMG, in the District of South Carolina.  *See* Forfeiture Order [Ex. P-8].

19. Until the Defendant was indicted, the Plaintiffs did not know that these alter egos were also owned by Defendant.  *See* Culpepper Aff. [Ex. P-18] at ¶¶6-7.

20. Records from MEU shows that the IP addresses of Defendant and the alter egos were used by Defendant's customers to pirate Plaintiffs' Works thousands of times. *See* Arheidt Aff. [Ex. P-12] at ¶¶20-21; [Ex. P-11] at p.4.

**D. Defendant earned millions of dollars and profits from contributing to piracy.**

21. Evidence submitted by Plaintiffs show that the market rate for leasing 5 IP addresses and a server in Denver, Colorado from IaaS providers similar to Defendant ranges from $79/month to $359/month depending on the type of processor chosen.  *See* Culpepper Aff. [Ex. P-18] at ¶¶33-34.

22. Defendant received $3,375,104 in proceeds from sale of IP address blocks. *See UNITED STATES OF AMERICA v. AMIR GOLESTAN*, *et al.,* 2:19-cr-00441-RMG, GOVERNMENT'S MEMORANDUM PERTAINING TO CALCULATION OF LOSS [Ex. P-5] at p9.

23. Defendant had an Asset Purchase Agreement with Saudi Telecom to sell seven address blocks at $19 an address for a total of $6,225,920.00 at the time it was indicted for fraud.  *Id.*

24. In April of 2018, Defendant had an agreement with Amazon to purchase 913,408 IPv4 addresses for a total of $14,157,824.00.  *Id.*

9

## II. DISCUSSION

***A. Plaintiffs' Claims for Maximum Statutory Damages are supported by Evidence.***

25.     An infringer is liable for "either (1) the copyright owner's actual damages and any additional profits of the infringer…or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a. Plaintiff have elected statutory damages for their Works. *See* Culpepper Aff. [Ex. P-18] at ¶2. Particularly, Plaintiffs request statutory damages of $150,000 for infringement of the 28 Works for a total of $4,200,000.

26.     Subsection (c) provides statutory damages in the amount of "(1)…a sum of not less than $750 or more than $30,000 as the court considers just…(2)…In a case where…that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(1).

27.     The Court previously found that Defendant's "…contributory infringement was willful within the meaning of 17 U.S.C. § 504(c)(2)". Order [Doc. #47] at p.6.

28.     In determining an amount of statutory damages for copyright infringements, some Courts will generally consider: 1) the nature of the infringement; 2) the defendant's purpose and intent; 3) the profit that the defendant reaped, if any, or the expense that the defendant saved; 4) the revenue lost by plaintiff as a result of the infringements; 5) the value of the copyrights; 6) the duration of the infringements; 6) the defendant's continuation of infringement after notice or knowledge of copyright claims; and, 7) the need to deter this defendant and other potential infringers. *See Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 71 (1st Cir. 2013).

29. Plaintiffs have presented evidence that the services for at least one of Defendant's customers NordVPN was explicitly marketed for pirating their movies specifically. *See* Culpepper Aff. [Ex. P-18] at ¶¶14-20.

30. Plaintiffs have presented evidence that Defendant's business strategy was to amass VPN customers. To that end, Defendant used fake companies to illicitly acquire more IP addresses from ARIN. Defendant provided IP addresses to its VPN customers through itself directly or through its fake companies so that the VPN customers would not know all the IP addresses were coming solely from Defendant. Defendant refused to even forward the Notices to its VPN customers to avoid risking its profitable relationship. Plaintiff has presented evidence that Defendant has multimillion dollar contracts to sell IP addresses it accumulated thanks to the VPN customers. Although Plaintiff has elected statutory damages, it should be noted that 17 U.S. Code § 504 provides that "[i]In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue…"

31. The strong value of Plaintiffs screenplay and motion picture copyrights is self-evident. The motion pictures feature popular stars such as John Travolta, Morgan Freeman, Samuel Jackson, Sylvester Stallone, Nicholas Cage, and Angela Basset, among others and are currently available for sale in retail stores and for rental and digital download online. The motion pictures *London Has Fallen* and *Angel Has Fallen* are second and third parts of a trilogy of movies. The Work *I Spit on Your Grave* was strong enough to support release of two sequels.

32. Plaintiffs have presented evidence that Defendant continued to knowingly

11

provide services to its customers that were pirating the Works despite having received thousands of notices. Indeed, Defendant is deemed having admitted this by failing to respond to the Requests for Admission.

33.   Plaintiffs have presented strong evidence setting forth the revenue they have lost from piracy by Defendant's customers. Particularly, Plaintiffs assert that their loss is approximately $6,210,707.28 based upon calculating the number of times the Work was pirated multiplied by the retail price of the Work. The summary of Plaintiffs' calculations is shown below.

| MOTION PICTURE | CAPTURES/HITS | PRICE | Damage (Retail) |
|---|---|---|---|
| 211 | 16730 | $7.95 | $133,003.50 |
| A Family Man | 4867 | $17.02 | $82,836.34 |
| Angel Has Fallen | 7236 | $11.00 | $79,596.00 |
| Automata | 4543 | $25.04 | $113,756.72 |
| Bedeviled | 1485 | $29.98 | $44,520.30 |
| Before I Go to Sleep | 1745 | $15.99 | $27,902.55 |
| Boyka: Undisputed IV | 4872 | $11.99 | $58,415.28 |
| Criminal | 7620 | $29.89 | $227,761.80 |
| Day of the Dead: Bloodline | 9951 | $13.99 | $139,214.49 |
| Extremely Wicked, Shockingly Vile and Evil | 6697 | $11.36 | $76,077.92 |
| Hellboy | 47747 | $16.10 | $768,726.70 |
| Hitman's Bodyguard, The | 46924 | $14.96 | $701,983.04 |
| Homefront | 3898 | $25.00 | $97,450.00 |
| Humbling, The | 1286 | $16.30 | $20,961.80 |
| Hunter Killer | 47060 | $38.85 | $1,828,281.00 |
| I am Wrath | 3438 | $15.00 | $51,570.00 |
| I Feel Pretty | 27340 | $19.02 | $520,006.80 |

| | | | |
|---|---|---|---|
| *I Spit on Your Grave* | 0 | $10.79 | $0.00 |
| *Kill Chain* | 4294 | $21.01 | $90,216.94 |
| *London Has Fallen* | 20329 | $9.99 | $203,086.71 |
| *Mechanic: Resurrection* | 16672 | $17.99 | $299,929.28 |
| *Once Upon a Time in Venice* | 7491 | $17.99 | $134,763.09 |
| *Professor and the Madman, The* | 12798 | $11.90 | $152,296.20 |
| *Rambo V: Last Blood* | 5588 | $12.40 | $69,291.20 |
| *SKIN* | 2684 | $22.80 | $61,195.20 |
| *Status Update* | 5525 | $19.98 | $110,389.50 |
| *Survivor* | 3721 | $14.99 | $55,777.79 |
| *Welcome Home* | 6031 | $10.23 | $61,697.13 |
| | | | **$6,210,707.28** |

34. Plaintiffs further assert that additional copyright protected Works of theirs were pirated by Micfo's alter egos. Particularly, affiliates of Millennium Funding, Inc. asserts an additional $136,039.38 of damages and affiliates of Voltage Holdings, LLC asserts additional damages of $380,808.20.

35. Millennium controlled titles

| No. | MOTION PICTURE | HIT# | Damage (HIT#*$6.99) |
|---|---|---|---|
| 42 | Chuck | 3437 | $24,024.63 |
| 43 | Olympus Has Fallen | 5270 | $36,837.3 |
| 44 | Septembers of Shiraz | 1622 | $11,337.78 |
| 45 | Texas Chainsaw Massacre 3D | 15 | $104.85 |
| 46 | The Expendables 2 | 47 | $328.53 |
| 47 | The | 9071 | $63,406.29 |

13

|   | Expendables 3 |       |              |
|---|---------------|-------|--------------|
|   |               | **19462** | **$136,039.38** |

36.     Voltage controlled titles

| No. | OWNER | MOTION PICTURE | HIT# | Damage (HIT#*$6.99) |
|-----|-------|----------------|------|---------------------|
| 29 | Voltage Holdings, LLC | *The Cobbler* | 6787 | 47441.1 |
| 30 | Voltage Holdings, LLC | *Lady Bloodfight* | 570 | 3984.3 |
| 31 | Blunt Force Trauma, LLC | *Blunt Force Trauma* | 925 | 6465.75 |
| 32 | State of the Union Distribution and Collections, LLC | *Wild Horses* | 862 | 6025.38 |
| 33 | Backmask, LLC | *Exeter* | 128 | 894.72 |
| 34 | Voltage Holdings, LLC | *I.T.* | 4368 | 30532.3 |
| 35 | Colossal Movie Productions, LLC | *Colossal*; | 3662 | 25597.4 |
| 36 | MON, LLC | *Singularity* | 9735 | 68047.7 |
| 37 | Dead Trigger Movie, LLC | *Dead Trigger* | 3898 | 27247 |
| 38 | YAR Productions, Inc. | *Distorted* | 8780 | 61372.2 |
| 39 | West Arts, LLC | *The Executioners* | 2252 | 15741.5 |
| 40 | Wonder One, LLC | *Disturbing the Peace* | 94 | 657.06 |

14

| 41 | Ace in the Hole Productions, LP | Look Away | 12418 | 86801.8 |
|---|---|---|---|---|
| | | | **54479** | **$380,808.20** |

37. Indeed, the gross revenue Plaintiffs have lost is over fifty percent higher than the maximum statutory damages of $4,200,000 they collectively requests. For some titles the loss balloons maximum statutory damages. For example, Plaintiff Millennium Funding, Inc. lost $768,726.70 in revenue just for piracy of *Hellboy* by Defendant's customers but only requests statutory damages of $150,000. Accordingly, the Court finds Plaintiffs' request for maximum statutory damages of $4,200,000 more than reasonable in view of Plaintiffs' lost revenue of nearly $7,000,000 and the multi-million dollar profits Defendant gained from contributing to piracy by accumulating valuable IP addresses.

***B. The Court transfers Defendant's claims against its customers for breach of terms of service to Plaintiffs.***

38. The terms of service in effect at the time of the piracy required Defendant's customers to indemnify Defendant for any liability. *See* [Ex. P-10] Section 8.4 of Terms of Service. In order for Plaintiffs to satisfy this money judgment, pursuant to Fed. R. Civ. P. 69(a)(1), the Court orders that any and all claims Defendant and its alter egos (Oppobox, LLC, Univera Network LLC, Roya Hosting, LLC, Virtuzo LLC, Contina Communications, LLC, Fiber Galaxy, LLC, Telentia, LLC, Border Technology, LLC and Fairway Network, Inc.) have against its customers including but not limited to PROTON TECHNOLOGIES AG and TEFINCOM S.A. dba NordVPN arising out of this action including but not limited

15

to breach of terms of service whether founded on contract or tort, are hereby assigned by Defendant Micfo, LLC to Plaintiffs. This transfer is effective for all customers to which Defendant reassigned IP addresses where Plaintiffs' Works were pirated and shall take priority over any other claims other creditors may have against Defendant Micfo, LLC to the extent it satisfies the money judgment. Accordingly, Plaintiffs can file claims for breach of terms of service against the customers in the name of Defendant pursuant to this Order.

### *C. Plaintiffs are awarded attorney's Fees*

39. Pursuant to 17 U.S.C. § 505, Plaintiffs are awarded attorneys' fees of $46,137.28 and costs of $733.45 pursuant to 17 U.S.C. § 505.

### *D. The Automatic 30 Day Stay of Judgment is Lifted*

40. Plaintiffs' counsel asserts that it intends to bring this judgment before the District Court in South Carolina to support its claim for restitution from the nearly $17,000,000 in funds and assets Defendant forfeited to the U.S. government after pleading guilty. Accordingly, pursuant to Fed. R. Civ. P. 62(a), the Court orders that Plaintiffs may execute judgment immediately.

### III. ORDER

41. It is ORDERED that a MONEY JUDGMENT is entered in favor of the Plaintiffs MILLENNIUM FUNDING, INC., 211 PRODUCTIONS, INC., BEDEVILED LLC, BODYGUARD PRODUCTIONS, INC., DAY OF DEAD PRODUCTIONS, INC., FAMILY OF THE YEAR PRODUCTIONS, LLC, HUNTER KILLER PRODUCTIONS, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, LHF PRODUCTIONS, INC., MILLENNIUM IP, INC., MILLENNIUM MEDIA, INC.,

16

MILLENNIUM SPVH, INC., MON, LLC, RAMBO V PRODUCTIONS, INC., SF FILM, LLC, VENICE PI, LLC, and VOLTAGE HOLDINGS, LLC and against the Defendant Micfo LLC in the amount of $4,200,000 in statutory damages, $46,137.28 in attorneys' fees and $733.45 of costs.

42. It is FURTHER ORDERED that any and all claims of Defendant Micfo LLC and its alter egos arising out of this action against its customers including but not limited to breach of terms of service whether founded on contract or tort, are hereby assigned by Defendant Micfo, LLC to Plaintiffs so any monetary relief can be used to satisfy the money judgment.

43. This case is closed.

DATED:   This 31st day of October, 2022.

By the Court

*[signature: Brooke Jackson]*

R. Brooke Jackson
United States District Judge